IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Village of Oakwood, et. al.                               Case No. 3:07CV1736

               Plaintiff

    v.                                                      ORDER

The State Bank and Trust Company,

               Defendant, Third Party Plaintiff

    v.

Federal Deposit Insurance Corporation,

               Third Party Defendant

      This is a suit by former depositors (the uninsured depositors) of the Oakwood Deposit Bank

Company (Oakwood Bank), a depository institution for which third party defendant the Federal

Deposit Insurance Corporation (FDIC or the Corporation) served as receiver. In its capacity as

receiver, the FDIC transferred certain assets from Oakwood Bank to the defendant State Bank and

Trust Company (State Bank) via a purchase and assumption agreement (P&A agreement).[1]

---

[1]

The FDIC serves two primary roles when a bank fails. As explained in *F.D.I.C. v. Rahn*, 116 F.3d
1142, 1145 (6th Cir. 1997):

> On one hand, the FDIC acts as receiver of a failed bank, marshaling its assets in
> order to pay the bank's creditors. On the other hand, the FDIC-Corp. acts as an
> insurer of member banks. In its corporate capacity, the FDIC must make the most of
> the assets purchased from the FDIC as receiver.

FDIC-Corporate and FDIC-Receiver act independently of one another and are distinct legal entities.
*See, e.g.*, *Texas Am. Bancshares, Inc. v. Clarke*, 954 F.2d 329, 335 (5th Cir.1992).

Under the P&A agreement, State Bank assumed the FDIC's insured deposit liabilities (liabilities that the FDIC had as a function of its corporate relationship with Oakwood Bank) and agreed to purchase some, but not all, of Oakwood Bank's assets from the FDIC as receiver. The plaintiffs' uninsured deposits with State Bank were not among those that the FDIC transferred to State Bank. The FDIC as receiver agreed to indemnify State Bank for any claims made against it that might be based on liabilities of Oakwood that State Bank did not assume.

Plaintiffs claim that State Bank is liable for the amount of the uninsured deposits because of State Bank's alleged: 1) status as a successor to Oakwood bank; 2) role in aiding and abetting the FDIC's alleged breach of fiduciary duty to the uninsured depositors; 3) position as a constructive trustee; and 4) breach of contract with the uninsured depositors. Following the submission of numerous briefs supporting and opposing motions for dismissal, summary judgment and remand, these matters are decisional.

For the following reasons, plaintiffs' motion to remand [Doc. 26] is denied and defendants' motions for summary judgment [Docs. 10, 11] are granted.

## Background

In accordance with its P&A agreement with the FDIC, State Bank assumed certain insured deposits and liabilities of Oakwood Bank. But it did not assume the plaintiffs' uninsured deposits.

Thereafter, the uninsured depositors participated in the receivership process, filing claims with the FDIC. The FDIC, in turn, issued Receiver's Certificates as to the uninsured depositors' claims. Though able to do so under 12 U.S.C. § 1821(d)(6), plaintiffs never requested administrative review of their claims or filed suit based on the FDIC's treatment of such claims.

2

Instead, the uninsured depositors sued State Bank in the Paulding County, Ohio, Court of Common Pleas. Their complaint alleged that the FDIC's transaction with State Bank – particularly State Banks's assumption of funds that Oakwood Bank's Vice President had not recorded in Oakwood Bank's books but which the FDIC nonetheless identified as insured deposits – breached the Corporation's duties to the plaintiffs. They contended that, as a result of the bank's dealings with the FDIC, they were worse off than if those dealings had never occurred.

On learning of the plaintiffs' suit against State Bank, the FDIC sought to intervene in the state court action as a matter of right and to substitute itself as the only proper or necessary party defendant. Thereafter, but before the state court had ruled on the motion to intervene, the FDIC removed the case to this court. In addition, it sought summary judgment in this court.

I initially remanded the matter to state court because, in view of the lack of ruling on its motion in state court to intervene, the FDIC was not a party to the case. But on reconsideration, I dismissed the action, granting summary judgment to the FDIC. *Village of Oakwood v. State Bank and Trust Co.*, 410 F. Supp.2d 670, 673 (N.D. Ohio 2006), *rev'd*, 481 F.3d 364 (6th Cir. 2007).

In reaching my decision, I cited portions of Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) which bars this court's jurisdiction over most claims involving depository institutions in federal receivership unless the claimant follows the time and venue provisions of that Act. *Id.*

The Court of Appeals for the Sixth Circuit reversed my decision. *Village of Oakwood v. State Bank and Trust Co.,* 481 F.3d 364 (6th Cir. 2007). The basis for its reversal was that the FDIC's removal of the case from state court was premature. *Id.* at 368. The court, however, noted its "skepticism that the uninsured depositors' claims can survive FIRREA's bar against courts

3

adjudicating 'any claim relating to any act or omission of . . . the Corporation as receiver.'" *Id.* at 369 (quoting 12 U.S.C. § 1821(d)(13)(D)(ii)).

Following remand, defendant State Bank brought a third party claim against the FDIC, alleging a right to indemnification under the P&A agreement. On June 12, 2007, the FDIC again removed the case to this court.

## Discussion

### A. Jurisdiction is Proper

The uninsured depositors argue that the Tucker Act (28 U.S.C. § 1491) provides exclusive jurisdiction in the Federal Court of Claims for State Bank's indemnification claims against the FDIC.[2] While the Tucker Act provides potential jurisdiction, it does not provide the only forum in which State Bank can present its third party plaintiff claims against the FDIC.

The uninsured depositors correctly contend that claims, if brought under the Tucker Act for over $10,000, must be brought in the Court of Claims. This third party complaint, however, is not brought under the Tucker Act; instead, State Bank sues – and seeks jurisdiction in this Court – under the "sue and be sued" clause of FIRREA (12 U.S.C. § 1819(a)(Fourth)).[3] This clause "provides an

---

[2]

The relevant section states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

[3]

The relevant text of the statutes states: "Upon June 16, 1933, the Corporation shall become a body corporate and as such shall have power– . . . Fourth. To sue and be sued, and complain and

4

independent basis for district court jurisdiction in this case." *Karstens Products, Inc. v. F.D.I.C.*, No. 95-1392, 1995 WL 769019, at *3 (Fed. Cir. Dec. 19, 1995); *see also Auction Co. of Am. v. F.D.I.C.*, 132 F.3d 746, 753 (D.C. Cir. 1997) (explaining that parties may bring suit against the FDIC "in the Court of Federal Claims, if they have a Tucker Act suit for more than $10,000; they may bring a Tucker Act suit for a lesser amount in either the Court of Federal Claims or a district court; and they may sue in any court of law or equity under the FDIC sue-or-be-sued clause"); *Far West Fed. Bank, S.B. v. Dir., Office of Thrift Supervision*, 930 F.2d 883, 888-89 (Fed. Cir. 1991) (holding that the "sue and be sued" clause of 12 U.S.C. § 1819 is a general waiver of sovereign immunity for claims against the FDIC, despite the availability of jurisdiction via the Tucker Act). State Bank's claims against the FDIC are proper and the FDIC is properly a party to this matter.

Therefore, based on 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331, this court has jurisdiction over the entire dispute. 12 U.S.C. § 1819(b)(2) (deeming all suits to which the FDIC is a party to arise under federal law and explaining how the FDIC may remove such cases to federal court); *see also Village of Oakwood*, *supra*, 481 F.3d at 368 ("Under § 1819(b)(2), if a case or controversy includes *any* claim to which the FDIC is a party, the district court has jurisdiction over the entire case or controversy.").

Therefore, Village of Oakwood's motion for remand shall be denied.

### B. The Uninsured Depositors' Claims

The FDIC is a third party defendant in this case because the uninsured depositors bring all their claims against State Bank – the entity that assumed the insured deposits of the failed Oakwood

---

defend, by and through its own attorneys, in any court of law or equity, State or Federal." 12 U.S.C. 1819(a)(Fourth).

Bank – and none against the FDIC. While it is not clear that the FDIC served the uninsured depositors in the best manner possible, see *infra* Section C, the plaintiffs' efforts to obtain redress through a suit against the State Bank are severely misplaced. Yet it is clear why the uninsured depositors have picked State Bank as the sole target of their allegations; having failed to make claims against the FDIC via the required administrative process, plaintiffs recognize they will be barred from making such claims at this late date. Unfortunately for them, they are also barred from bringing the same claims against State Bank.

### 1. Statutory Structure: 12 U.S.C. § 1821(d)(6) and (d)(13)

The FIRREA is, to say the least, "a complex statute." *Brady Dev. Co., Inc. v. Resolution Trust Corp.*, 14 F.3d 998, 1002 (10th Cir. 1994). Congress enacted it to create a comprehensive and efficient process for administering the numerous claims that arose in the wake of the widespread failure in the late 1980s of saving and loan institutions.

Among the statute's several functions, it "sets forth a detailed series of rules under which all claims involving an insolvent institution are received and handled." *Id.* at 1003. These rules – contained in 12 U.S.C. §§ 1821(d)(3)-(6) – apply to all federal and state chartered banks and thrifts and require: 1) the receiver to post notice of the depository institution's failure in a newspaper and mail notices to creditors; 2) creditors to file claims within approximately ninety days of the notice; 3) the receiver to make a determination with regard to the claim within 180 days of the date of filing (unless there is an extension); and 4) creditors to be able to seek administrative review or file suit in district court within sixty days of the receiver's denial of their claims or the receiver's failure to make a determination as required. 12 U.S.C. § 1821(d)(3)-(6); *see also Simon v. F.D.I.C.*, 48 F.3d

53, 56 (1st Cir. 1995) (outlining FIRREA's procedures); *Managing the Crisis: The FDIC and RTC Experience, 1980-1994* 247 (same).

      If a party fails to follow these procedures within the prescribed time periods, the "claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B)(ii).[4]

      As if to highlight that the process outlined in § 1821(d)(6) is the only means of review available to claimants, Congress also included a jurisdictional limitation in the FIRREA. This section explains that "[e]xcept as otherwise provided in [§ 1821(d)]" no court has jurisdiction over

---

[4]

12 U.S.C. § 1821(d)(6) in its entirety provides:

    (A) In general
    Before the end of the 60-day period beginning on the earlier of--
    (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or
    (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),
    the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).
    (B) Statute of limitations
    If any claimant fails to--
    (i) request administrative review of any claim in accordance with subparagraph (A) or (B) of paragraph (7); or
    (ii) file suit on such claim (or continue an action commenced before the appointment of the receiver),
    before the end of the 60-day period described in subparagraph (A), the claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

"(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver;" as well as "(ii) any claim relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C. § 1821(d)(13)(D)(i)-(ii).

As already noted, the uninsured depositors did not raise their claims, seek administrative review, or bring suit in district court within the timetable outlined in 12 U.S.C. § 1821(d)(5)-(6). The uninsured depositors assert that they had no opportunity to do so because the claims at bar – directed at State Bank rather than the FDIC – could not be pursued via the administrative procedures of § 1821(d)(6). State Bank counters that this court must dismiss the uninsured depositors claims regardless of whether any portion of § 1821 provides a means of review because the plaintiffs' claims are clearly related to an "act or omission of  .  .  .  the Corporation as receiver." 12 U.S.C. § 1821(d)(13)(ii).

While State Bank's textual reading of § 1821(d)(13) appears accurate on its face, the statute demands a more thorough analysis. Other courts have noted that claims that are "not 'against a depository institution'" but that are restricted by the language of § 1821(d)(13) could "foreclose judicial jurisdiction altogether, a result troubling from a constitutional perspective and certainly not the goal of FIRREA." *Auction Co. of Am. v. F.D.I.C.*, 141 F.3d 1198, 1200 (D.C. Cir. 1998). Most courts, therefore, interpret (d)(6) in conjunction with (d)(13), such that sub-section (d)(6)(A) "routes claims through an administrative review process, and sub-section (d)(13)(D) withholds judicial review unless and until claims are so routed." *Id.* at 1200; *see also Home Capital Collateral, Inc. v. F.D.I.C.*, 96 F.3d760, 763 (5th Cir. 1996) ("This provision [(d)(13)] has been interpreted as

imposing a statutory exhaustion requirement rather than an absolute bar to jurisdiction."); *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1400 (D.C. Cir. 1995)("The effect of these provisions, read together, is to require anyone bringing a claim against or 'seeking a determination of rights with respect to' the assets of a failed bank held by the FDIC as receiver to first exhaust administrative remedies by filing an administrative claim under the FDIC's administrative claims process."); *Hudson United Bank v. Chase Manhattan Bank of Conn.*, 43 F.3d 843, 849-50 (3rd Cir. 1994) ("By deciding the administrative claims procedure and the jurisdictional bar have concurrent scope, we avoid the possibility raised in *National Union* that § 1821(d)(13)(D) could become 'an independent and outright bar of jurisdiction' rather than a mere exhaustion requirement if § 1821(d)(13)(D) were to have broader reach than the administrative claims procedures."); *Brady Dev.*, *supra*, 14 F.3d at 1003 (10th Cir. 1994) ("The precise jurisdictional limitations on the Article III courts mandated by FIRREA are determined by reading section 1821(d)(13) in conjunction with the statute's allowance of an action within sixty days of a claim being denied as provided for in section 1821(d)(6)(A)."); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 484 (8th Cir. 1993) ("Every court that has considered the issue has found exhaustion of FIRREA's administrative remedies to be a jurisdictional prerequisite to suit in district court.").

As if to broaden this narrow reading of (d)(13), courts have also found that the "claim[s]" described in (d)(6) and (d)(13) include claims against the receiver itself and not just claims for which the receiver stands in the shoes of the failed depository institution. *McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1081 (9th Cir. 2003) (joining "the majority of courts in holding that claimants . . . who challenge conduct by the FDIC as receiver, must exhaust administrative remedies before seeking judicial review"); *Stamm v. Paul*, 121 F.3d 635, 639-42 (11th Cir. 1997) (interpreting sub-section

9

(d)(6) as providing the RTC with a basis to review post-receivership claims based on the RTC's actions as receiver); *Home Capital Collateral, Inc.*, *supra*, 96 F.3d at 763-64 (5th Cir. 1996) (holding that FIRREA's exhaustion requirement applies to claims arising post-receivership due to actions of the receiver); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 393-94 (3d Cir. 1991) (concluding that claims against the receiver fall within the language of §1821 (d)(13)(D)(i)); *Ladd v. Second Nat. Bank of Warren*, 941 F. Supp. 87, 91 (N.D.Ohio,1996) (dismissing post-receivership claims for failure to initiate administrative process*); see also Holmes Fin. Assocs. v. Resolution Trust Corp.*, 33 F.3d 561, 563 n.1 (6th Cir.1994) (citing *Rosa*'s "post-receivership claim" in observing that courts have unanimously inferred an exhaustion requirement). *Contra Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1274 (10th Cir. 1994) ("In examining the whole of this process it is evident that the term 'claim' as used in § 1821(d)(13) should be interpreted to exclude claims such as Homeland's arising from management actions of the RTC after taking over a depository institution."); *Lopez-Flores v. Resolution Trust Corp.*, 93 F. Supp.2d 834, 849 (E.D. Mich. 2000) (concluding "that the administrative process of § 1821 does not cover claims that arise after receivership from the independent acts of the governmental agency").

In support of this broader interpretation of (d)(6), courts point out that "the FDIC has interpreted § 1821(d)(5)(C)(ii), which permits claimants who did not receive notice of the receiver's appointment to file after the bar date imposed by FIRREA has passed, also to permit late filing by those whose claims do not arise until after the deadline has passed." *McCarthy*, *supra*, 348 F.3d 1081; *Heno v. F.D.I.C.*, 20 F.3d 1204, 1209 (1st Cir. 1994) (holding that FDIC's regulatory procedures allowing for late filled claims "*even by claimants who were on notice of the FDIC's appointment* but could not file their claim because it did not come into existence until after the bar

10

date" represented a permissible reading of the § 1821(d)(5) under *Chevron*). This allowance for other post-deadline claims – as well as the policy goals of the FIRREA statute – supports the view that § 1821(d)(6)'s administrative claims procedure can resolve events occurring after the failed institution goes into receivership.

### 2. Application of 12 U.S.C. § 1821(d)(6) and (d)(13)

The uninsured depositors raise several constitutional arguments with regard to the provisions of FIRREA limiting this court's jurisdiction. The first of these arguments stems from a concern that this court will cite § 1821(d)(13)'s judicial review limitation as an outright bar to jurisdiction over any and all claims "relating to any act or omission of such [depository] institution or the Corporation as receiver" rather than as an exhaustion requirement. 12 U.S.C. § 1821(d)(13).

Such an interpretation, the uninsured depositors allege, would interfere with claimants' Fifth Amendment due process rights because claims against an assuming bank cannot be raised via § 1821(d)(6). Further, the plaintiffs argue that any interpretations to the contrary – i.e. forcing claimants to request the FDIC review of the actions of assuming banks – would violate the role of the federal courts under Article III of the Constitution. *See N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).

I do not interpret the limitations of 12 U.S.C. § 1821(d)(13) as an outright bar to jurisdiction. But I am not persuaded that all the uninsured depositors' claims could not have been brought via the process outline in 12 U.S.C.§ 1821(d)(6).

While the prevailing interpretation of (d)(13) as an exhaustion requirement came into being, in part, to avoid barring claims that could not come into court via § 1821(d)(6), that does not mean

11

that all claims not "against a depository institution" must be resolved outside the mandate of § 1821(d)(6). *See Auction Co. of Am.*, *supra*, 141 F.3d at 1200.

In addition to pursing claims via the administrative process, claimants can "file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)." 12 U.S.C. § 1821(d)(6)(A)(ii). Thus, nothing would have stopped the plaintiffs – on discovering (if it is indeed the case) that they could not obtain redress via administrative proceedings – from filing suit in district court as allowed under §1821(d)(6).

The plaintiffs were on notice of the receivership. When the receiver took the actions that underlie the uninsured depositors claims – claims that are clearly relate to an "act or omission of . . . the Corporation as receiver" – the uninsured depositors should have sought their remedies within sixty days via the options available under § 1821(d)(6). *See* 12 U.S.C. §§ 1821 (d)(6)(A), (13)(D)(ii). As there is no evidence that the plaintiffs either sought administrative review or filed their claims in the appropriate district court, the claims are disallowed. Consequently, the claimants have no further rights (and thus no right to a hearing in this court) with regard to the claims.

The alternative – to permit claimants to avoid the provisions of (d)(6) and (d)(13) by bringing claims against the assuming bank – would encourage the very litigation that FIRREA aimed to avoid. *See, e.g.*, *Brady Dev.*, *supra*, 14 F.3d at 1002-03 (describing the goal of FIRREA as providing "'funds from public and private sources to deal expeditiously' with faltering and failed savings and loans"). The resulting regime would "thwart FIRREA's purpose and permit creditors to evade the

12

comprehensive administrative claims procedures envisioned by the statute." *Id.* at 1006. It would also create an obstacle to the FDIC's quick and successful resolution of failed banks; an assuming bank would rarely be inclined to enter a P&A agreement with the FDIC knowing that it could be taking on unidentified liabilities of undefined dimensions that could arise at some uncertain date in the future.

This broader view of the requirements of §1821(d)(13) best harmonizes § 1821(d)(6) with § 1821(d)(13). It also encourages claimants to seek redress in a timely manner; waiting and seeking an initial hearing in federal court will not provide any advantage. If the uninsured depositors are correct, and the FDIC cannot review claims against the assuming bank, then those claims should be brought in federal court within the timetable explicated in §1821(d)(6) and stayed until any required findings are resolved via the administrative review process.

Accordingly, the defendants' motions for summary judgment shall be granted.

### 3. The Four Claims Against State Bank

Notwithstanding the previous holding, it is important to point out that many of the uninsured depositors claims would fail even if I did not apply §1821(d)'s exhaustion requirement. The foundations on which the plaintiffs base their claims wholly ignore the legal role of State Bank in the receivership process. That most of the claims are premised on actions taken by the FDIC, rather than the defendant State Bank, indicates that the plaintiffs know their case would be stronger if they had a means of bringing it against the FDIC.

### a. Successor Liability

The uninsured depositors allege that State Bank is liable to them as the successor institution to Oakwood Bank. When the FDIC became receiver for Oakwood Bank it immediately assumed

13

ownership of all deposit and accountholder claims against Oakwood Bank and all the failed bank's assets. 12 U.S.C. § 1821(d)(2)(A)(i). Shortly thereafter, the FDIC entered into the P&A agreement with State Bank. Through this agreement, the FDIC transferred some liabilities to State Bank, but State Bank did not assume liability for uninsured deposits or the actions of the FDIC. Any application of the law making State Bank a successor for these liabilities would prevent the FDIC from transferring distinct assets or liabilities and would, in effect, make every failed bank resolution a merger. *Compare* 12 U.S.C. § 1821(d)(2)(G)(i)(I) (explaining that the FDIC may "merge the insured depository institution with another insured depository institution"), *with* 12 U.S.C. § 1821(d)(2)(G)(i)(II) (explaining that the FDIC may "transfer any asset or liability of the institution in default").

Courts have endorsed the transfer of assets without liabilities in similar contexts. *Kennedy v. Mainland Sav. Ass'n*, 41 F.3d 986, 990-91 (5th Cir. 1994) ("The federal receiver such as the FSLIC or RTC has the power to sell an asset . . . while retaining a related liability, and no liability is transferred to an assuming institution such as Old Southwest absent an express transfer."); *Lawson v. Household Bank*, 20 F.3d 786, 788 (7th Cir. 1994) (stating the plaintiff's claims against successor bank had to be based on the P&A agreement between the RTC and the successor bank "under which the latter acquired certain deposits and assumed certain liabilities"); *Payne v. Sec. Sav. & Loan Ass'n*, 924 F.2d 109, 111 (7th Cir. 1991) (explaining that FIRREA "provides that RTC, and not a subsequent purchaser of assets, is the successor to a failed thrift's liabilities unless RTC expressly designates otherwise"); *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1109 (holding that a P&A agreement did not transfer the liabilities in question from the RTC to the assuming bank and noting that "very few, if any, banks would enter into purchase and assumption agreements with

a federal receiver if the successor banks had to assume the latent claims of unknown magnitude of shareholders like appellants").

The uninsured depositors' argument that the current situation is different because the claims arose after the FDIC became receiver is unpersuasive. What matters is not when the claims accrued but, rather, whether liability for the claims ever transferred from Oakwood Bank to State Bank or from the FDIC to State Bank. There was never a relationship between Oakwood and State Bank allowing for any transfer of liabilities. There is, likewise, no dispute that the P&A agreement between the FDIC and State Bank did not transfers any liabilities.

Ohio state law is not to the contrary. The uninsured depositors' cite *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St. 3d 344, 346-47 (1993) for the proposition that State Bank may be responsible for corporate liabilities it did not expressly assume. *Welco*, however, cites this doctrine as an exception to the general rule that "the purchaser of a corporation's assets is *not* liable for the debts and obligations of the seller corporation." *Id.* (emphasis added).

Of the four exceptions recited in *Welco*,[5] the plaintiffs appear to rely on the exception for transactions entered into fraudulently for the purpose of escaping liability. But a mere assertion that the P&A agreement was illegal is not the same as a factual allegation that the agreement was designed to enable any of the parties fraudulently to escape liability.

In any case, such allegation would appear to implicate the FDIC as the culpable party seeking to avoid liability by transferring assets. To the extent that the plaintiffs had an opportunity

---

[5]

The four exceptions are: "(1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability." *Welco Indus., Inc v. Applied Cos.*, 67 Ohio St. 3d 344, 349 (1993) (citing *Flaugher v. Cone Automatic Mach. Co.*, 30 Ohio St.3d 60, 62 (1987)).

15

via 12 U.S.C. § 1821(d)(6) to bring a claim against the FDIC and failed to do so, the allegation is not a basis for recovery against *State Bank*.

Plaintiffs' claim of successor liability is not well taken. Having failed to bring their claims against the FDIC under § 1821(d)(6), conventional principles protecting successors against the liabilities of predecessors except in limited circumstances precludes such claim against State Bank.

### b. Aiding and Abetting

The uninsured depositors assert that State Bank is liable for aiding and abetting a breach of fiduciary duty by the FDIC. This claims also fails "because Ohio law is unsettled whether this cause of action exists." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 570 (6th Cir. 2006); *see also Pavlovich v. Nat'l City Bank*, 342 F. Supp. 2d 718, 734-36 (N.D. Ohio 2004) (describing the debate as to whether aiding and abetting fraud is a valid claim in Ohio); *Fed. Mgt. Co. v. Coopers & Lybrand*, 137 Ohio App. 3d 366, 381 (2000) ("Ohio does not recognize a claim for aiding and abetting common-law fraud").

Furthermore, the uninsured depositors fail to raise any triable issues of material fact. To prove that State Bank aided and abetted the FDIC's breach, plaintiffs must show: 1) the FDIC owed a duty to the defendants; 2) the FDIC breached that duty; 3) State Bank knew that the FDIC was breaching that duty; and 4) State Bank gave substantial assistance to the FDIC in breaching that duty. Restatement (Second) of Torts § 876(b) (1979).

Besides pointing to State Bank's assumption of deposits as part of the P&A agreement, the uninsured depositors offer no facts supporting the allegation that State Bank had knowledge of the FDIC's alleged breach of duty, nor how it even could have obtained such knowledge. *See Pavlovich*,

16

*supra*, 435 F.3d at 570-71. Therefore, even if Ohio recognized such a tort, the uninsured depositors claim would still fail.

### c. Constructive Trust

The uninsured depositors appear to argue that the remedy of a constructive trust should serve as a separate claim for relief. The plaintiffs never fully explain this confusing allegation. However, because I do not believe that the property in question was acquired by fraud, a constructive trust is neither an appropriate claim for relief nor an appropriate remedy.

### d. Breach of Contract

The uninsured depositors breach of contract claim also fails on the merits. The plaintiffs do not allege that they had a contract with State Bank but only that their claims "relate to deposits State Bank assumed and then rejected."[6] (Doc. 12 at 19). Yet there are no factual allegations to support the claim that State Bank assumed and then rejected any of plaintiff's uninsured deposits. There are also no allegations of any contractual relationship between the uninsured depositors and State Bank. Accordingly, uninsured depositors' contract claim fails.

### C. The Legality of the P&A Agreement

Three of the plaintiff's four claims appear to rely on the assertion that the FDIC's P&A agreement with State Bank violated the National Depositor Preference Law and breached the FDIC's fiduciary duty to Oakwood Bank's uninsured depositors. The uninsured depositors cite pre-FIRREA

---

[6]

In this claim, the plaintiffs may be alluding to a post-closing practice in which an assuming bank assumes all of a failed bank's assets and then the receiver repurchases assets that it needs or the assuming bank has the option to "put back" assets to the receiver within thirty or sixty days. *See Managing the Crisis: The FDIC and RTC Experience, 1980-1994* at 79-80, 220. There were apparently some puts in operation in the agreement between the FDIC and State Bank, though there is no evidence that the bank assumed, and then executed an option to put back, any uninsured deposit liabilities.

receivership cases – namely *First Empire Bank v. F.D.I.C.*, 572 F.2d 1361 (9th Cir. 1978) and

*F.D.I.C. v. Citizens Bank & Trust Co.*, 592 F.2d 364 (7th Cir. 1979) – to support their argument. On

the facts presented, it is difficult to assess whether such a violation occurred, though I note that the

plaintiff's misconstrue the FDIC's obligations to depositors.

As the plaintiffs appear to acknowledge in their brief in opposition to the motion to dismiss

[Doc. 14, at 3, n.2], the law entitles depositors to a pro rata payment of dividends on their Receiver's

Certificates after the receiver accounts for the expenses of conducting the receivership. Only after

depositors are fully paid can the general creditors and subsequent classes obtain payment. 12 U.S.C.

§ 1821(d)(11)(A).

But this arrangement does not mean that *First Empire Bank v. F.D.I.C.*, 572 F.2d 1361 (9th

Cir. 1978), is still controlling. That decision, held that the FDIC cannot prefer one class of similarly

situated creditors over another or "prefer some creditors over others paying some in full while others

received little or nothing." *Id.* at 1371. After *First Empire*, Congress passed FIRREA, which

provided the FDIC with the authority to "pay additional amounts to some creditors of a failed

depository institution without being obligated to make additional payments to other creditors *in the*

*same class*."[7] *Managing the Crisis*, *supra*, at 726 (emphasis added); *see also* 12 U.S.C. § 1821(i);

---

[7]

The relevant portion of FIRREA, codified at of 12 U.S.C. § 1821(i), provides:

> (1) In general
> Notwithstanding any other provision of Federal law or the law of any State and
> regardless of the method which the Corporation determines to utilize with respect to
> an insured depository institution in default or in danger of default, including
> transactions authorized under subsection (n) of this section and section 1823(c) of
> this title, this subsection shall govern the rights of the creditors (other than insured
> depositors) of such institution.
> (2) Maximum liability
> The maximum liability of the Corporation, acting as receiver or in any other

18

*Texas Am. Bancshares, Inc. v. Clarke*, 954 F.2d 329, 340 (5th Cir. 1992) (noting the impact of 12 U.S.C. § 1821(i)); *Branch v. F.D.I.C.*, 825 F. Supp. 384, 413-14 (D. Mass. 1993)(explaining that the portion of FIRREA codified at § 1821(i) limits the FDIC's maximum liability to a claimant to the amount the claimant would have received had the FDIC simply liquidated the assets and liabilities of the bank, even if some creditors receive 100 percent payment on their claims).

Based on the information before me, it is difficult, if not impossible, to assess whether the uninsured depositors will actually receive their pro rata share of the value of Oakwood Bank's assets, if the bank had been liquidated, via their Receivership Certificates. Nevertheless, the FDIC was not, as the plaintiffs assert, required to treat all depositors equally.

### Conclusion

For the foregoing reasons, it is therefore,

ORDERED THAT:

1. Plaintiffs' motion for remand [Doc. 26] be, and the same hereby is denied; and

2. The defendants' motions for summary judgment [Docs. 10, 11] be, and the same hereby are, granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

---

capacity, to any person having a claim against the receiver or the insured depository institution for which such receiver is appointed shall equal the amount such claimant would have received if the Corporation had liquidated the assets and liabilities of such institution without exercising the Corporation's authority under subsection (n) of this section or section 1823 of this title.

19